**SO ORDERED.**

**SIGNED this 28 day of January, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

| | |
|---|---|
| IN RE: | |
| CHARLIE LEE KEETER, III and DEBRA LOWE KEETER, | CASE NUMBER: 09-03443-8-SWH CHAPTER 7 |
| DEBTORS. | |
| | |
| IN RE: | |
| JOHN DEERE CONSTRUCTION & FORESTRY COMPANY, | |
| PLAINTIFFS, | |
| v. | ADVERSARY PROCEEDING NO. 10-00033-8-JRL |
| CHARLIE LEE KEETER, III, | |
| DEFENDANT. | |

## ORDER

This matter came before the court on the plaintiff's motion for summary judgment. A hearing was held in Raleigh, North Carolina on December 22, 2011.

**JURISDICTION AND PROCEDURE**

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

**UNDISPUTED FACTS**

1. Power Equipment Plus, Inc. ("PEP") is an entity in the business of renting construction equipment to third parties. Charlie Keeter ("Keeter"), the male debtor, is the owner and principal operator of PEP.

2. PEP executed a series of loan contracts (the "loan contracts") with John Deere Construction and Forestry Company ("Deere") for the purchase of equipment. Keeter is a co-borrower under the loan contracts; therefore, he is liable in his individual capacity.

3. Keeter jointly filed a voluntary petition under chapter 7 with his wife on April 28, 2009. At the time of petition, ten loan contracts were in default.

4. On December 14, 2009, a consent judgment was entered in Vance County Superior Court against PEP. Keeter was not a party to the judgment because of the previously filed bankruptcy case. In addition to monetary awards, the judgment provided that Deere could take possession of the collateral underlying the ten loan contracts. On the same date, plaintiff examined Keeter under oath pursuant to Bankruptcy Rule 2004 about the status of the collateral. During the examination, Keeter revealed certain units of collateral were sold to third parties.

5. Deere instituted this adversary proceeding against Keeter on February 12, 2010,

seeking to except from discharge the obligations owed to Deere with respect to five of the ten loan contracts. The five units of collateral at issue are:

    a.    John Deere 650H Crawler Dozer, serial number T0650HX938067 ( "July 2004 contract")

    b.    John Deere 650H Crawler Dozer, serial number T0650HX904895 ( "November 2004 contract")

    c.    John Deere 450 Crawler Dozer, serial number T0450JX107761 ( "July 2005 contract")

    d.    John Deere 700 Crawler Dozer, serial number T0700JX114928 ("Second July 2005 contract")

    e.    John Deere 650J Crawler Dozer, serial number T0650JX141899 ("April 2007 contract")

6. On April 23, 2010, Keeter admitted by answer that the five units of collateral in question were sold voluntarily while he was aware of Deere's security interest in the equipment.

7. Following the sale of the collateral to third parties, PEP continued to make the minimum monthly payments under the loan contracts, reducing the balance owed on individual pieces of collateral.

8. Each contract contained a valid cross-collateralization provision providing that each piece of Deere collateral was security for any other indebtedness between the defendant and Deere. However, some ambiguity is created as to this provision in the November 2004 contract. In the November 2004 contract, a specific piece of earlier-purchased collateral is identified as additional security for that obligation. This provision is somewhat inconsistent with the cross-collateralization clause. At any rate, the defendant's statement in his affidavit that he was unaware of the effect of the cross-collateralization clause until 2008 is unrebutted.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

Section 523(a)(6) excepts from discharge any debt arising from a "willful and malicious injury by the debtor to another entity or to the property of another entity."  This court throughly addressed the legal standard of wilful and malicious injury within the meaning of § 523 in In re Buck, 406 B.R. 703 (Bankr. E.D.N.C. 2009).  The plaintiff contends that the present case deals with conversion of collateral; and, in light of the 2004 exam testimony and admissions of the debtor,  Buck applies on all fours.  As such, the cross-collateralization would result in the exception of the entire remaining debt owing to Deere.

The defendant urges the court to consider its decision in USA v. Tommy T. Haynes and Connie W. Haynes, 05-00265-8-AP (Bankr. E.D.N.C. 2006)  as more attune with the facts of this

case. The defendant asserts that the issue before the court is not conversion of collateral, but breach of contract. Because PEP continued to make monthly payments to Deere after the sale of collateral and intended to pay the sums contractually owed, the defendant asserts no wilful and malicious injury was inflicted. If, however, the court finds wilful and malicious injury by conversion, the defendant contends that the amount deemed non-dischargeable is no greater than $127,880.00, which reflects the total remaining balance including credit for payments made. The defendant admits that the sale of collateral associated with the Second July 2005 contract in December 2008 for $51,000.00 should be held non-dischargeable. By that point, the defendant cannot credibly assert that he believed himself capable of satisfying the underlying indebtedness.

Wilfulness within the meaning of § 523(a)(6) is satisfied by showing the defendant caused a "deliberate or intentional injury, not merely a deliberate or intentional act that [led] to injury." In re Buck, 406 B.R. 703, 706 (Bankr. E.D.N.C. 2009)(citing Kawaauhau v. Geiger (In re Geiger), 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)). The second prong, malice, means that the defendant "was knowledgeable that his actions were wrong." Buck, 406 B.R. at 706 (citing In re Roundtree, 2002 WL 832669 (Bankr. M.D.N.C. 2002), In re Russell, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001)). In his deposition, and by admission in the answer, the defendant states that he knowingly sold the collateral in which Deere held an interest. Such open acknowledgment would seem to satisfy the terms of § 523(a)(6); however, upon closer inspection, the facts do not merit a blanket finding of non-dischargeability with respect to all of the loan contracts.

After scrutinizing the facts of this case, the court is persuaded that summary judgment is inappropriate as to three of the five loan contracts. The plaintiff states that all of the loan

contracts contained an express provision prohibiting the sale of collateral without written permission from Deere.  Critically, this is only true as to the April 2007 contract.  Under the terms of the preceding loan contracts, the sale of collateral without permission triggered an event of default but was not expressly forbidden.  Instead, "any attempt to sell or encumber any interest in the Goods" is one of numerous conditions identified as events of default entitling Deere to accelerate the loan and reclaim collateral in its discretion.  There is no provision requiring the proceeds of any sale be remitted to Deere, nor any evidence that Deere ever declared a default on this basis.  While the defendant may be accountable for  breaching the July 2004, November 2004, and July 2005 contracts, such action does not on summary judgment amount to a wilful and malicious injury within the meaning of § 523(a)(6). Geiger, 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); In re Russell, 262 B.R. 449, 453 (Bankr. N.D. Ind. 2001).

      Based on the foregoing, the motion for summary judgment is **GRANTED** in part.  The damage caused Deere by the conversion of collateral associated with the April 2007 loan contract is non-dischargeable.  That contract does in fact contain an express prohibition requiring the debtor not to "assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without Deere's prior written consent."  The same is true, by the debtor's own admission, of the conversion of collateral associated with the second July 2005 contract.  Summary judgment is **DENIED** as to the damage caused Deere arising under the contracts of July 2004, November 2004, and July 2005.

**END OF DOCUMENT**